1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GINO A. MALLAMO,                                   No. C-05-2648 JCS

        Plaintiff,                          **ORDER GRANTING DEFENDANT'S**
                              **MOTION FOR SUMMARY JUDGMENT,**
v.                                                 **DENYING PLAINTIFF'S MOTION FOR**
                              **SUMMARY JUDGMENT AND AFFIRMING**
JO ANN B. BARNHART,                                **DECISION OF COMMISSIONER**
        Defendant.                          **[Docket Nos. 17, 20]**
_____/

## I.    INTRODUCTION

Plaintiff, Gino A. Mallamo, filed a complaint on March 6, 2006, seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under Title II of the Social Security Act. Plaintiff asks the Court to reverse the Commissioner's denial of disability insurance benefits and award benefits or, alternatively, remand for further administrative proceedings.

Plaintiff applied for disability insurance benefits on July 2, 2002, alleging a disability onset date of December 5, 2000.[1] Administrative Record ("AR") at 46. The application was denied initially and on reconsideration, and Plaintiff timely requested a hearing. AR at 20-28. Plaintiff, his attorney, and a Vocational Expert ("VE") appeared at the hearing before Administrative Law Judge ("ALJ") Benjamin F. Parks on June 28, 2004. AR at 281-316. In a decision dated September 24, 2004, the ALJ found that Plaintiff was not disabled. AR at 12-19. Plaintiff requested administrative review, but the

---

[1] The Court notes that on application for disability benefits in the Administrative Record, the date of July 25, 2000, has been crossed out and replaced with December 5, 2000. The ALJ states in his decision that the onset date is December 5, 2000. AR at 13. Similarly, Plaintiff lists December 5, 2000, as the date of onset of disability in his summary judgment motion. Motion at 2.

United States District Court

For the Northern District of California

1  Appeals Council declined, making the ALJ's decision the final decision of the Commissioner.  AR at

2  9-11.

3      Plaintiff filed a motion for summary judgment  pursuant to 42 U.S.C. § 405(g).  The

4  Commissioner responded with a cross-motion for summary judgment.  The parties have consented to

5  the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

6  **II.      BACKGROUND**

7      **A.      Plaintiff's Background**

8      Plaintiff, Gino A. Mallamo, was 46 years old at the time of his administrative hearing.  AR at

9  13.  He has a high school education and his past work experience consists primarily of employment as

10 a warehouse worker.  AR at 76-82.

11      When he was 17, Plaintiff injured his right knee while playing high school football.  AR at 269.

12 He had surgery on the knee but tore his knee again a year later.  *Id.*  He has experienced "some chronic

13 problem ever since for the past 20 years and has worn a knee brace for periods of time."  *Id.*  However,

14 Plaintiff's knee injury did not impede his ability to work as a warehouseman or require any special

15 accommodations or work restrictions.  *Id.*

16      In 1985, Plaintiff injured his back while moving furniture.  AR at 183.  He was diagnosed at the

17 time of the injury with a herniated disc and received physical therapy as treatment.  *Id.*  Plaintiff was

18 offered surgery but declined.  *Id.*  He missed two years of work due to this back injury.  *Id.*

19      In April 2000, Plaintiff again injured his back, while working at Nabisco.  AR at 212.  According

20 to Plaintiff, he twisted his lower back, resulting in a sharp pain that radiated to his left groin, as he was

21 lifting and loading some freight.  *Id.*  He did not initially seek medical attention and the pain from that

22 injury gradually subsided over subsequent months.  *Id.*  However, his back pain flared up again in

23 August 2002.  AR at 250.

24      On July 25, 2000, Plaintiff injured his ankle while at work when he slipped while stepping down

25 from a truck, landing awkwardly on his left foot and "violently twisting" his ankle.  AR at 173.  The

26 company physician diagnosed the injury as a chipped bone, prescribed pain medication, and told

27 Plaintiff to return to work.  AR at 267.  However, Plaintiff's pain was so bad that after less than two

28 weeks at work, he consulted another doctor, who recommended physical therapy and rest.  *Id.*  Plaintiff

took two weeks off, then returned to work, but continued to experience pain. *Id.* At that point he consulted a chiropractor, who recommended an extensive program of physical therapy. *Id.* Plaintiff re-injured his ankle on the job in October 2000. *Id.* Finally, persistent pain forced Plaintiff to leave his job permanently on December 5, 2000. AR at 70. Plaintiff has suffered chronic ankle pain since the injury. AR at 289-90.

Plaintiff receives some assistance in shopping, cooking, cleaning, and performing other household chores. AR at 298-9. He took vocational rehabilitation classes in computers and accounting from January 2002 to May 2002. AR at 114. He did not complete the accounting program but he completed the computer training program in May 2002. *Id.* In January 2003, Plaintiff enrolled in classes at San Francisco City College but dropped out because of a flare-up in his back pain. AR at 297-298. In August 2003, Plaintiff began again to attend classes at City College. AR at 298. At the time of the Social Security hearing (June 28, 2004), Plaintiff was taking classes to train as an x-ray technician, attending three hours of class a day. AR at 298. Plaintiff testified he often had to miss class because of his chronic ankle pain and that he had difficulty getting from class to class. AR at 298-299.

**B.    Plaintiff's Medical History**

**1.    December 2000 - February 2001**

Dr. Howard A. Cohen served as Plaintiff's physician following his ankle injuries in July and October 2000. Dr. Cohen ordered a Magnetic Resonance Imaging ("MRI") of Plaintiff's ankle. AR at 174. Taken on December 20, 2000, the MRI revealed "osteochondral lesions with subchondral cystic degenerative changes involving the posteromedial tibial plafond and talar dome" and "mild sprain/scarring of the deltoid ligament." AR at 172.

Dr. Cohen diagnosed Plaintiff with an "osteochondral fracture" of the "left talar dome" and with "loose bodies" in the "medial and lateral gutters" of the left ankle. AR at 160. Dr. Cohen performed surgery on Plaintiff's ankle on February 9, 2001 in order to debride the left talar dome and remove the loose bodies. *Id.*

Plaintiff testified at the hearing that Dr. Cohen "operated on the wrong area . . . and added to the problem." AR at 286.

**United States District Court**
For the Northern District of California

## 2.    March 2001 - December 2002

Dr. Steven I. Subotnick became Plaintiff's primary treating physician in April 2001.  AR at 266. He noted that Plaintiff's pain persisted after the surgery.  AR at 272.  For this reason, on April 6, 2001, Dr. Subotnick listed Plaintiff as "temporarily/totally disabled at this time.  He is not ready to return to work."  AR at 273.

Dr. Subotnick performed a second surgery on Plaintiff's ankle on June 13, 2001.  AR. 261.  He performed the following procedures: 1) arthroscopy, synovetomy with debridement osteochondral defect; 2) open arthrotomy with arthroplasty and extensive debridement of the  medial tibiotalar joint; and 3) repair of the deltoid ligament.  AR at 261-262.

On August 13, 2001, two months after the surgery, Dr. Subotnick continued to list Plaintiff as "temporarily/totally disabled."  AR at 260.

On September 17, 2001, Dr. Subotnick performed a check-up on Plaintiff.  AR 257-58.   He noted that Plaintiff still had considerable swelling and stated that Plaintiff could not return to his previous job as a warehouse worker.  AR at 258.   However, he said that Plaintiff could perform sedentary work if such were available.  *Id.*

Dr. Subotnick declared Plaintiff "permanent and stationary" on January 18, 2002.  AR at 136. He recommended the following permanent work restrictions: "He should sit and rest his foot for 15 minutes every 1/2 hour to 3/4 of an hour on his foot.  He may stand upwards to 2 hours out of an 8 hour day. . . the patient has a prophylactic provision for not lifting more than 50 lbs."  AR at 136.  Dr. Subotnick noted that Plaintiff's condition had improved and that he could, as of January 18, 2002, walk for "1/2 hour to 45 minutes at any one time."  AR at 138.

On August 10, 2002, Dr. Landrus L. Pfeffinger examined Plaintiff and reviewed his medical records on behalf of the Commissioner.  AR 190-196.  Dr. Pfeffinger noted that Plaintiff walked with a limp and experienced pain in his left ankle and foot while walking.  AR at 191.  He found Plaintiff to have full range of motion in his back and normal muscle strength in his knees.  AR 191-93.  Dr. Pfeffinger confirmed Dr. Subotnick's determination of Plaintiff's status as "permanent and stationary" and declared that Plaintiff was not disabled regarding his lower back.  AR 193-94.  Regarding Plaintiff's left ankle, Dr. Pfeffinger wrote as follows:

4

United States District Court

For the Northern District of California

Subjective factors: In my opinion his subjective complaints could best be described as Minimal pain at rest, becoming Slight to Moderate with Prolonged Weight Bearing, Repetitive Heavy Lifting, Repetitive Squatting, Repetitive Clombing and Prolonged Traversing over Uneven Surfaces.

Objective Factors: There is noted a slight limitation of dorsiflexion on the left side when compared to the contralateral side, This would not preclude him from most normal activities, It is noteworthy that Dr. Sabotnick [sic] did not find any limitations in dorsiflexion and yet the examinee demonstrated a slight limitation on evaluation today. The examinee was noted to have limitation of subtalar joint motion on evaluation today and yet Dr. Sabotnick [sic] noted no limitation of subtalar joint motion. I could not find any objective reason for limitation of subtalar joint motion based on his MRI reports or x-rays.

. . .

The examinee walked with a slight limp on the left side with his foot in a plantar flexed position. This is secondary to complaints of pain. When walking on his toes, he complained of cramping in the 2nd through 4th toes as well as some pain in the medial malleolar region. While walking on his toes and squatting he was able to do these maneuvers. I noticed no crepitation with range of motion of his ankle to suggest evidence of arthritic changes. He does demonstrate a positive Tinel sign consistent with an incisional neuroma after arthroscopic portals and this appears to be his area of primary complaint on his left ankle.

The limitation in subtalar joint motion noted on my evaluation would not totally preclude him from walking on an uneven surface.

AR at 194-195. Dr. Pfeffinger recommended further ankle surgery and that Plaintiff "wean off of any narcotics that he is taking and go to an over-the-counter, non-steroidal anti-inflammatory medication." AR at 196.

Dr. Calvin Pon examined Plaintiff on September 17, 2002, also on behalf of the Commissioner. AR at 140-143. Plaintiff told Dr. Pon that he does use a cane but did not bring a cane to the appointment. AR at 140. Dr. Pon noted that Plaintiff "ambulates with no ambulatory aid. His gait was stable with normal cadence, velocity and stride length. There was a very slight limp on the left." AR at 141. Dr. Pon concluded that Plaintiff "can stand and/or walk for a total of four to six hours in an eight-hour workday. The [plaintiff] can sit for a total of six hours during an eight-hour workday . . . [and he] is able to frequently lift and carry 20 pounds and occasionally 20-30 pounds." AR at 143. Dr. Pon further stated that "[s]tooping, crouching, kneeling and squatting should be limited to occasionally

5

1    [and] [c]limbing stairs and ladders should be limited to occasionally." *Id*. He noted that Plaintiff might

2    also have "symptomatic limitations" as a result of his left ankle pain and left foot pain. *Id*.

3          Another consulting physician for the disability determination service ("DDS"), Dr. Stuart

4    Bussey, reviewed Plaintiff's records on October 17, 2002. AR at 144-151. Dr. Bussey concluded that

5    Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk for 6

6    hours out of an 8 hour day and could frequently climb, balance, stoop, kneel, crouch, or crawl. AR at

7    145-146. He stated that his conclusions were not significantly different from those of Plaintiff's treating

8    physician. AR at 150.

9          On October 29, 2002, Dr. Subotnick amended his January 18, 2002 report, advising Plaintiff not

10   to lift more than 25 pounds (rather than the 50 pound limit in Dr. Subotnick's earlier report). AR at 120.

11         On December 12, 2002, Dr. Subotnick reviewed an October 2002 MRI and diagnosed Plaintiff

12   with degenerative disc disease. AR at 101. Dr. Subotnick noted that Plaintiff was "afraid of having

13   surgery" and Dr. Subotnick himself did not encourage back surgery for Plaintiff. *Id*. Instead, Dr.

14   Subotnick referred Plaintiff to the Seaton Medical Center in Daly City for further evaluation and to

15   begin a physical therapy program. AR at 101-102.

16              **3.**     **December 2002 - September 2003**

17         Dr. Noel Goldthwaite of the Spinecare Medical Group examined Plaintiff on April 25, 2003.

18   AR at 212-33. He noted that Plaintiff had a limited range of motion in his back: a flexion of 45% of

19   normal and an extension of 10% of normal. Dr. Goldthwaite diagnosed Plaintiff with: 1) lumbar disc

20   degeneration; 2) herniated nucleus pulposus without myelopathy; and 3) lumbar spinal stenosis. AR

21   at 217. Dr. Goldthwaite prescribed Plaintiff lumbar stabilization exercises, physical therapy, pain

22   killers, and anti-inflammatories. AR at 218.

23         On May 22, 2003, Dr. Subotnick again examined Plaintiff and noted that Plaintiff's ankle injury

24   had flared up but that his back had improved. AR 244-47. Dr. Subotnick stated in his report:

25   "[Plaintiff] therefore has a modified work restriction for his back which contemplates sedentary work,

26   no lifting over 15 lbs, no repetitive motion. He has a permanent modified work restriction for his ankle

27   and foot for sedentary work, no lifting over 15 lbs." *Id.*

28

In a report written on June 10, 2003, Dr. Subotnick reiterated this prognosis and stated: "[Patient] has a restriction for sitting and resting for 10 minutes every one-quarter of an hour, no lifting, pushing or pulling over 15 lbs when standing or walking." AR at 241.

On June 24, 2003, Dr. Goldthwaite examined Plaintiff and stated that Plaintiff should limit his activity to 10 minutes of walking and 30 minutes of sitting at any given time. AR at 199.

On September 25, 2003, Dr. Subotnick noted that Plaintiff's continued pain made it difficult for Plaintiff to get to class on time given the short period of time between classes. AR at 236. Dr. Subotnick also noted that Plaintiff had continued trouble walking on uneven surfaces. *Id.* Dr. Subotnick encouraged sessions with a physical trainer for Plaintiff. AR at 237. "Regarding further treatment such as surgery, [Dr. Subotnick did] not feel this would be necessary for the patient's left ankle or his spine. He is not interested in steroid epidurals nor is he interested in any more surgery." AR at 237.

### C.        Administrative Hearing

Plaintiff, his attorney, and a VE appeared before an ALJ on June 28, 2004. AR at 283. The ALJ questioned Plaintiff about his relevant education and work history. AR at 283-85. Plaintiff explained how he injured his ankle stepping down from a truck on July 25, 2000. AR at 286. Plaintiff also described the pain this injury continues to inflict, stating that spending too much time on his feet causes his injured foot to "cramp up." AR at 287. Plaintiff testified, "[t]hat throws me on my back, makes me scream like a child." *Id.* Describing his back pain, Plaintiff testified: "[i]t's like a knife. . . . Like the last time I was just walking up a hill and it's like a knife stabs me in the back. And then it radiates all through both of my legs." AR at 288.

After hearing testimony from Plaintiff, the ALJ questioned a VE about the availability of jobs that Plaintiff could perform, given his limitations. AR at 310-15. The ALJ posed various "hypotheticals" to the VE, each a possible representation of Plaintiff's work capabilities, resulting in the following exchange:

> Q:        Okay. Hypothetical Number Two. Assume a person with his education at light with occasional stooping, crawling and bending. No foot pedals. And two hours stand/walk, six hour sitting. Mental RFC, mild activities of daily living. Mild for social function. Mild for concentration, persistence, pace, and they can do one and two-step tasks, no episodes of decompensation. Are there any jobs in the regional or national economy that person can perform?

**United States District Court**
For the Northern District of California

1    A:    The position of ticket taker and parking lot attendant would still seem to be appropriate.

2    Q:    At the sedentary level?

3    A:    Oh, I'm sorry.  I thought you said light.

4    Q:    I had two hours stand/walk, six hours sitting.

5    A:    Sorry, no I don't believe so at the sedentary level.

6    Q:    Okay.  Any other jobs that are in the regional or national economy that would fit the
        hypothetical?

7
8    A:    No, I don't thinks so.

9    Q:    There are no sedentary unskilled jobs?

10   A:    Sedentary unskilled jobs?

11   Q:    Right.

12   A:    Information clerk, at DOT code 237.367 - 022.  They – there are – do not exist in very
        significant numbers, but –

13   Q:    Uh-hum

14   A:    It is an unskilled sedentary position.

15   Q:    Okay.  Any in the national economy?

16   A:    In the national economy, approximately 16,000.

17   Q:    Okay, and how many in the local?

18   A:    Local, approximately 250.

19   Q:    Okay.  Anything else?

20   A:    Table worker, DOT 739 –

21   Q:    Table worker?

22   A:    Yes.

23   Q:    Okay.

24   A:    687.182.  This is also an SVP of 2.  And I do not have local numbers, but nationally over
        100,000.

25   Q:    What's a table worker do?

26   A:    A table worker's a very light assembly position.

27
28   AR at 313-314.

8

**D.      Disability Insurance Benefits and the Five-Step Evaluation Process**

The Social Security Act provides disability insurance benefits when a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives.

*Id.*

The Commissioner has established a sequential five-step evaluation process to determine whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  If the Commissioner can determine that the claimant is conclusively disabled or not disabled at a step, the Commissioner does not proceed to the next step.  20 C.F.R. § 404.1520(a)(4).  Otherwise, the Commissioner proceeds to the next step.  The claimant bears the burden of proving his disability in Steps One through Four.  *See Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).  At Step Five, the burden shifts to the Commissioner to prove that the claimant can perform other work.  *See Distasio v. Shalala,* 47 F.3d 348, 349 (9th Cir. 1995).

At Step One, the Commissioner considers the claimant's work activity.   20 C.F.R. § 404.1520(a)(I).  If the claimant is doing "substantial gainful activity," the claimant is found to be not disabled.  *Id.*  If the claimant is not doing substantial gainful activity, the evaluation proceeds to Step Two.  *Id.*

At Step Two, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" or combination of such impairments "that meets the duration requirement of § 404.1509."  20 C.F.R. § 404.1520(a)(ii).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  To meet the duration requirement of 20 C.F.R. § 404.1509, the impairment(s) must be expected to result in death or it must have lasted or be expected to last for a continuous period of not

9

less than 12 months.  If the claimant does not have a severe impairment that meets this duration requirement, disability benefits are denied at this step. 20 C.F.R. § 404.1520(a)(ii). If the claimant does have a severe impairment that meets the duration requirement, the Commissioner proceeds to Step Three. *Id.*

At Step Three, the Commissioner compares the claimant's impairments with a list of impairments that the Commissioner has determined are disabling ("Appendix 1").  20 C.F.R. § 404.1520(a)(iii). If the claimant's impairment(s) meets or equals in severity an item on the list, and this impairment(s) meets the duration requirement, the claimant is disabled.  *Id.*  Otherwise, the Commissioner proceeds to Step Four.  *Id.*

At Step Four, the Commissioner considers the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(iv).  A claimant's RFC is the most the claimant can do in light of the physical and/or mental limitations caused by the impairment(s).  20 C.F.R. § 404.1545.  If the claimant can perform his past relevant work, he is not disabled.  *Id.*  Past relevant work is work the claimant has done in the 15 months prior to the evaluation that was substantial gainful activity and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(I).  If the claimant cannot perform his past relevant work, the evaluation proceeds to Step Five.  *Id.* § 404.1545.

At Step Five, the Commissioner considers whether the claimant, in light of his RFC, age, education, and work experience, can make an adjustment to "other work" in the national economy.  20 C.F.R. § 404.1520(a)(v).  If the claimant can make an adjustment to other work, he is not disabled.  20 C.F.R. 404.1520(a)(v).  However, if the claimant cannot make an adjustment to other work, he is disabled and eligible for disability benefits.  *Id.*

**E.    The ALJ's Five-Step Evaluation**

At Step One, the ALJ in this case found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  AR at 13.

At Step Two, the ALJ found that Plaintiff's impairments were severe.  AR 13-14.  The ALJ found that Plaintiff suffered from "degenerative disc disease of the lumbar spine with low back pain and a history of left ankle fracture and ligament injury post surgical repair," impairments the ALJ considered severe.  *Id.*

**United States District Court**
For the Northern District of California

1    At Step Three, the ALJ found that Plaintiff's impairments did not meet or equal one of the

2    impairments listed in Appendix 1. AR at 14.

3    At Step Four, the ALJ considered Plaintiff's RFC and his past relevant work. AR 14-16. In

4    considering Plaintiff's RFC, the ALJ relied on the reports of Dr. Subotnick and the consulting

5    physicians, concluding that Plaintiff had the following RFC:

6             the ability to lift and carry 10-pounds frequently and 20-pounds
         occasionally and to stand and walk for 2-hours and sit for 6-hours in

7             an 8-hour day with appropriate breaks. Further, the claimant is limited to
         no more than occasional stooping, crawling, or bending, cannot use any

8             foot pedals. Mentally, the claimant is mildly limited in activities of daily
         living, mildly limited in social interactions with others, and mildly

9             limited in concentration, persistence and pace and can perform no more
         than 1-or-2 step instructions.

10

11   AR at 16. The ALJ concluded that Plaintiff's testimony regarding his pain was not credible and that

12   Plaintiff exaggerated his limitations. AR at 15. In support of this conclusion, the ALJ pointed to:

13   1) Plaintiff's unwillingness to undergo back surgery; 2) Plaintiff's ability to attend classes and perform

14   "activities of daily living" and; 3) the behavior of Plaintiff at the administrative hearing. *Id.* The ALJ

15   further noted that "no examining [] physician indicates that the claimant is completely disabled from

16   all work activities." AR at 14.

17   Based on the RFC described above, as well as testimony by the VE that Plaintiff's past work

18   required exertion that exceeded the RFC, the ALJ concluded that Plaintiff could not perform any of his

19   past relevant work. *Id.* The ALJ therefore proceeded to the fifth and final step of the evaluation

20   process.

21   At Step Five, the ALJ concluded that Plaintiff could make an adjustment to other work. AR at

22   17. The ALJ first determined that Plaintiff has no transferable skills and/or that transferability of skills

23   was not an issue in Plaintiff's case. *Id.* The ALJ then concluded that Plaintiff could perform a

24   "significant range of light work." *Id.* Based on testimony by the VE that Plaintiff's limitations would

25   allow him to work as an information clerk or a table worker, and that such jobs exist in significant

26   number in the national and local economy, the ALJ concluded that Plaintiff was not under a disability

27   as defined by the Social Security Act. *Id.*

28

**United States District Court**
For the Northern District of California

1    **F.    The Motions**

2          Plaintiff asserts that the ALJ's determination should be reversed for the following reasons:  1)

3    the ALJ erred in concluding at Step Three that Plaintiff's impairments did not meet an Appendix 1

4    listing, at least for the period July 25, 2000, until October 15, 2001; 2) the ALJ erred in concluding that

5    Plaintiff could perform a "significant range of light work," given that Dr. Subotnick stated that Plaintiff

6    could stand or walk only two hours out of an eight hour day, which would limit him to sedentary work;

7    3) the ALJ erred in relying on the testimony of the VE at Step Five regarding Plaintiff's ability to work

8    as an Information Clerk or a Table Worker; and 4) the ALJ improperly rejected Plaintiff's pain

9    testimony.

10          Defendant asserts that the ALJ did not err and that his decision is supported by substantial

11   evidence.

12   **III.    ANALYSIS**

13          **A.    Legal Standard**

14          When asked to review the Commissioner's decision, the Court takes as conclusive any findings

15   of the Commissioner which are free from legal error and supported by "substantial evidence." 42 U.S.C.

16   § 405(g).  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to

17   support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means

18   "more than a mere scintilla," *id.*, but "less than a preponderance." *Desrosiers v. Sec'y of Health and*

19   *Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

20          Even if the Commissioner's findings are supported by substantial evidence, they should be set

21   aside if proper legal standards were not applied when weighing the evidence and in reaching a decision.

22   *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  In reviewing the record, the Court must consider

23   both the evidence that supports and detracts from the Commissioner's conclusions.  *Smolen v. Chater*,

24   80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).  The

25   Court may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting

26   evidence."  *See Jones*, 760 F.2d at 995.  However, "[w]here evidence is susceptible to more than one

27   rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

28   Cir. 2005).

12

United States District Court

For the Northern District of California

**B.      Step Three Determination**

Plaintiff contests the ALJ's Step Three determination that Plaintiff did not meet an Appendix 1 Listing.  AR at 14.  Plaintiff argues that he met Listing 1.02 from at least the date of his ankle injury, July 25, 2000, until October 15, 2001.[2]  Plaintiff also contends that the ALJ erred at Step Three by failing to adequately explain why Plaintiff's impairment(s) did not meet or equal a Listing.  Plaintiff contends that "[a] mere statement that a claimant does not equal a listing is insufficient."  Defendant rejects these arguments.  Defendant counters that Listing 1.02 includes an inability to ambulate (i.e. walk) effectively and argues that Defendant failed to prove his inability to ambulate.  The Court concludes that the ALJ did not err in finding that the Plaintiff did not *meet* or *equal* an Appendix 1 Listing.

Listing 1.02 reads as follows:

> anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.   This Listing requires proof that Plaintiff's impairments prevented him from ambulating effectively for at least 12 months.  *Id*; *see also* 20 C.F.R. § 404.1525(c)(4).  Inability to ambulate effectively is described as follows:

> . . . an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. §  404, Subpt. P, App. 1, § 1.02(B)(2)(b)(1).

---

[2] As noted above, the record reflects that the alleged onset date was December 5, 2000, the date on which Plaintiff actually stopped working, rather than July 25, 2000.  Even if the alleged onset date were July 25, 2000, however, the Court's conclusion would be the same.

13

United States District Court
For the Northern District of California

1   The record fails to show that Plaintiff could not ambulate without the use of a hand-held assistive
2   device that limit the functioning of both upper extremities for a period of twelve months. Plaintiff also
3   does not point to any such evidence in his motion for summary judgment.  Therefore, the ALJ's
4   determination that Plaintiff did not meet a Listing at Step Three was supported by substantial evidence.

5   The Court also rejects Plaintiff's assertion that the ALJ's decision must be reversed because he
6   did not adequately explain why Plaintiff's impairments did not *equal* a Listing.  Plaintiff relies on
7   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), which holds that an ALJ must consider whether
8   a combination of impairments medically equals a Listing and must "explain adequately" his evaluation.
9   In *Marcia*, the Court held that where the claimant had presented specific evidence to the ALJ in an effort
10  to establish equivalence, the ALJ was required to make findings explaining why he rejected that
11  evidence.  *Id*.  In a subsequent decision, however, the Ninth Circuit made clear that where a claimant
12  fails to offer a plausible theory or point to specific evidence showing how a combination of impairments
13  is equivalent, the ALJ does not err in concluding a claimant does not equal a listing without making
14  specific findings.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (distinguishing *Marcia*).  Here, as
15  in *Lewis*, Plaintiff has failed to offer a plausible theory or point to medical evidence showing that his
16  combination of impairments met a listing at Step Three.

17  Therefore, the Court concludes that the ALJ did not err at Step Three.

18  **C.     Determination that Plaintiff Could Perform Light Work**

19  Plaintiff asserts that the ALJ erred when he concluded that Plaintiff could perform a "significant
20  range of light work," AR at 17, because this conclusion is inconsistent with his prior determination that
21  Plaintiff could stand or walk for only two hours of an eight-hour day.  The Court rejects Plaintiff's
22  position.

23  The Social Security Act defines light work as follows:

24  Light work. Light work involves lifting no more than 20 pounds at a time
    with frequent lifting or carrying of objects weighing up to 10 pounds.
25  Even though the weight lifted may be very little, a job is in this category
    when it requires *a good deal of walking or standing*, or when it involves
26  sitting most of the time with some pushing and pulling of arm or leg
    controls. To be considered capable of performing a full or wide range of
27  light work, you must have the ability to do substantially all of these
    activities. If someone can do light work, we determine that he or she can
28

United States District Court

For the Northern District of California

also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.  To the extent that a claimant must be able to do "substantially all" of the activities listed to be considered capable of performing a "full or wide range of light work" the ALJ's conclusion that Plaintiff could stand or walk for only two hours a day would preclude such a finding. The ALJ did not, however, make such a finding.  Instead, the ALJ found that Plaintiff could perform a "*significant range* of light work," acknowledging that Plaintiff's "ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations." *Id.* (Emphasis added).  While the words "significant range" might be confusingly similar to the words "wide range" if read out of context, it is clear from the ALJ's decision that he understood that Plaintiff could not perform light work that required him to stand or walk more than two hours a day. In particular, the ALJ expressly included this limitation in the hypothetical to the VE and obtained testimony regarding available positions for someone with such a limitation.

Accordingly, the ALJ did not err in concluding that Plaintiff could perform a significant range of light work.

**D.    Reliance on VE Testimony**

Plaintiff asserts that the ALJ's reliance on the testimony of the VE at Step Five was improper and therefore, that the Commissioner's decision must be reversed.  First, Plaintiff contests the ALJ's reliance on the VE's testimony that Plaintiff could work as an Information Clerk, given that the *Dictionary of Occupational Titles* ("DOT") lists this position as semi-skilled and the ALJ found that Plaintiff had no transferrable skills.  In light of this discrepancy, Plaintiff argues, the ALJ should have provided findings explaining why he credited the VE's testimony over the DOT.  Second, Plaintiff argues that the ALJ erred in relying on the VE's testimony regarding Table Worker jobs, as the VE referred to that job as "light" while the DOT classified it as "sedentary."  The Court concludes that while the ALJ erred with respect to the Information Clerk job, this error is harmless because the ALJ's finding regarding the Table Worker job provides substantial evidence in support of his conclusion at Step Five that Plaintiff is not disabled.

United States District Court

For the Northern District of California

1    The DOT classifies the position of Information Clerk as having a Specific Vocational

2 Preparation ("SVP") of 4. Under Social Security Ruling ("SSR") 00-4p, "unskilled work corresponds

3 to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an

4 SVP of 5-9 in the DOT." Therefore, the job of Information Clerk is considered a semi-skilled position

5 according to the DOT. The VE, however, characterized the position of Information Clerk as an

6 "unskilled" position. AR at 313. Therefore, the ALJ had a duty to explain why he credited the VE's

7 testimony over the DOT. In particular, SSR 00-4p instructs ALJs as follows:

8         When there is an apparent unresolved conflict between VE . . . evidence
          and the DOT, the adjudicator must elicit a reasonable explanation for the

9         conflict before relying on the VE . . .evidence to support a determination
          or decision about whether the claimant is disabled. At the hearings level,

10        as part of the adjudicator's duty to fully and fairly develop the record, the
          adjudicator will inquire, on the record, as to whether or not there is such

11        consistency. Neither the DOT nor the VE . . . evidence automatically
          "trumps" when there is a conflict. The adjudicator must resolve the

12        conflict by determining if the explanation given by the VE . . . is
          reasonable and provides a basis for relying on the VE . . . testimony

13        rather than on the DOT information.

14 SSR 00-4p. The ALJ failed to question the VE about the discrepancy between her testimony and the

15 DOT. Nor did the ALJ provide any findings in support of his conclusion that Plaintiff, who the ALJ

16 found had no transferrable skills, could perform a job that the DOT describes as semiskilled. Therefore,

17 the ALJ erred in relying on the VE's testimony regarding Information Clerk positions at Step Five.

18    The ALJ's error, however, was harmless because he also cited testimony by the VE indicating

19 that Plaintiff could work as a Table Worker and that such jobs are available in the national economy.

20 *See Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1983) (applying harmless

21 error standard); *Daniel v. Sullivan*, 1991 WL 156207 (N.D.Ill. August 5, 1991) (holding that where ALJ

22 erred in concluding specific job was available, error was harmless because ALJ had properly found that

23 there were two other jobs available in the national economy that the claimant could perform). The DOT

24 classifies the job of Table Worker as unskilled, with an SVP of 2. Although the VE described this

25 position as a "very light assembly position," there is no specific testimony by the VE suggesting that

26 this job required capabilities beyond the sedentary capabilities listed in the DOT. Rather, the testimony,

27 when read in context, indicates that the VE considered this job to be a sedentary position. In particular,

28 the VE's testimony was in response to an express question by the ALJ regarding the availability of

**United States District Court**
For the Northern District of California

"sedentary unskilled jobs." AR at 313. Therefore, the ALJ did not err in relying on the VE's testimony regarding Table Worker jobs. Further, because the VE testified that there are 100,000 such jobs in the national economy, the ALJ's finding at Step Five is supported by substantial evidence.

### E.    ALJ's Credibility Determination

Plaintiff contests the ALJ's credibility determination, asserting that the ALJ placed undue emphasis on his school attendance, his failure to under undergo back surgery, and his demeanor at the hearing. The Court concludes that while the ALJ erred in relying on Plaintiff's failure to undergo back surgery, his credibility determination is, nonetheless, supported by substantial evidence.

A claimant's credibility in a Social Security hearing is the degree to which the claimant's statements can be believed and accepted as true. SSR 96-7p at 4. ALJs must make credibility findings to determine the truth of a claimant's description of her symptoms and pain. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (holding ALJ responsible for determining credibility and resolving conflicts in medical testimony). When making such findings, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements. The reasons for the findings must be grounded in the evidence and articulated in the determination or decision." *Id.* Such credibility findings are deserving of deference. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978). As stated in *Beavers*:

> The notion that special deference is owed to a credibility finding by a trier of fact is deeply imbedded in our law. The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.

577 F.2d at 387.

One of the reasons offered by the ALJ in support of his finding that Plaintiff's pain testimony was not credible was Plaintiff's failure to undergo back surgery. In particular, the ALJ stated, "[i]f the claimant's lumbar impairments were as[] severe as he alleges, he would certainly consider surgery which would alleviate those impairments." AR at 14. The regulations are clear, however, that  a claimant's receipt of disability benefits depends only upon his following prescribed medical treatment

United States District Court

For the Northern District of California

1  that could have restored the claimant's ability to work.  20 C.F.R. § 404.1530(a) ("In order to get

2  benefits, you must follow treatment prescribed by your physician if this treatment can restore your

3  ability to work").  Here,  Plaintiff's treating physician did not recommend surgery and there is no

4  evidence in the record that surgery would have restored Plaintiff's ability to work.  *See* AR at 101.

5  Therefore, the ALJ erred in relying on Plaintiff's failure to undergo back surgery in support of his

6  credibility determination.

7        Despite this error, however, the Court concludes that the ALJ's credibility determination is

8  supported by substantial evidence.   Specifically, the ALJ cited to Plaintiff's school attendance, his

9  demeanor at the hearing and the fact that none of Plaintiff's doctors found Plaintiff to be fully disabled

10  for a period of twelve months.

11        The Court rejects Plaintiff's argument that the ALJ erred in relying on Plaintiff's school

12  attendance on support of his credibility determination.  In support of his position, Plaintiff cites 20

13  C.F.R. § 404.1572.  That regulation states that "[g]enerally, we do not consider activities like taking care

14  of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs to

15  be substantial gainful activity."  Plaintiff's reliance on this regulation is misguided, however, as it

16  addresses Step One, not Step Four.  Whether or not school attendance constitutes substantial gainful

17  activity is an entirely different inquiry from the credibility determination made at Step Four.  At Step

18  Four, it is well established that school attendance may be considered in determining the credibility of

19  a claimant's pain testimony.  *See, e.g., Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (holding

20  that attending school three days a week was an activity "inconsistent with an alleged inability to perform

21  all work" and is thus grounds for finding a claimant not credible).

22        In the instant case, the ALJ noted that Plaintiff attends class for three hours a day several days

23  a week.  AR at 298.  The ALJ found this fact inconsistent with Plaintiff's claim that he could not

24  perform any form of gainful activity.  AR at 16.  This inconsistency led the ALJ to question Plaintiff's

25  credibility with regard to his subjective evaluation of his symptoms and pain.  *Id.*  This credibility

26  finding is consistent with *Matthews,* grounded in Plaintiff's testimony, and clearly articulated in the

27  ALJ's decision.  Therefore, it is deserving of deference.

28

**United States District Court**
For the Northern District of California

1    The Court also rejects Plaintiff's assertion that the ALJ relied too much on his demeanor at the

2  hearing. ALJ's cannot make credibility findings based *solely* on observations of a claimant's behavior

3  during the hearing, but should include such observations as part of the overall evaluation of the

4  claimant's credibility. SSR 96-7p at 8; *see also Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985)

5  (reversing decision of ALJ denying benefits where ALJ rejected pain testimony based *solely* on

6  demeanor at hearing); *cf. Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (affirming decision

7  of ALJ denying benefits where demeanor at hearing was one of several factors on which ALJ based

8  rejection of pain testimony).

9    In this case, the ALJ observed as follows:

10        The claimant was able to attend and follow the hearing proceedings
        closely and fully without any distractions or overt behavior, was able to
11        respond to questions in an appropriate manner and had a demeanor
        inconsistent with the allegations of complete disability.
12

13  AR at 16. These observations of the claimant were one of several factors considered by the ALJ and

14  as such, could reasonably be considered by the ALJ in making his credibility determination.

15  **IV.    CONCLUSION**

16    For the reasons stated above, the decision of the Commissioner is AFFIRMED. Plaintiff's

17  summary judgment motion is DENIED. The Commissioner's cross-motion for summary judgment is

18  GRANTED.

19    IT IS SO ORDERED.

20  Date: September 20, 2006

21  _____

22  JOSEPH C. SPERO
    United States Magistrate Judge

23

24

25

26

27

28